**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CARYN O'CONNOR,

        Plaintiff,

                                    CASE NO. 07-11090
v.                                    HON. LAWRENCE P. ZATKOFF

BUSCH'S INC., a Michigan
corporation,

        Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on August 19, 2008

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment [dkt. #21].

Plaintiff has responded to the motion and Defendant has since replied. The Court finds that the facts

and legal arguments are adequately presented in the parties' papers and the decision process would

not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. LR 7.1(e)(2), it is

hereby ORDERED that the motion be resolved on the briefs submitted. For the following reasons,

Defendant's motion will be GRANTED.

## II. BACKGROUND

Plaintiff brings this action pursuant to the Family and Medical Leave Act (FMLA or the

Act), 29 U.S.C. §§ 2601-54. Plaintiff was employed by Defendant for several years in the mid-

1980s, after which she ceased working for Defendant. Subsequently, Defendant rehired her as its

Vice President of Finance in May 2005.  Plaintiff reported directly to John Busch, Defendant's

President who Plaintiff knew to be a demanding employer.  Prior to starting work, Plaintiff received

and reviewed a copy of Defendant's employee handbook, which included an explanation of its

procedure for requesting leave under the FMLA.  During the first month of her employment,

Plaintiff's attendance was sporadic and her absences were described as excessive.  As a high-ranking

executive, Plaintiff was not required to provide notice of an absence in advance.  Still, Plaintiff gave

a variety of reasons for her absences and occasionally no reason at all.

On June 13, 2005, Plaintiff was involved in a car accident while on her way to work.[1]  On

that day, Plaintiff remembers driving to work, seeing a truck, and then arriving at work.  Although

she does not remember the accident or the six weeks preceding it, Plaintiff hypothesized that she

reacted to a piece of rubber in the roadway which caused her to either stop or swerve and hit her

head on the steering wheel.  The car Plaintiff was driving, however, had no damage or other signs

of an accident.  After the incident, Plaintiff continued to her office and worked for the next several

days without incident.  Thereafter, Plaintiff began experiencing pain in her back, which prompted

her to take approximately five days off, including the weekend.  Plaintiff then returned to work.

Eventually, on July 29, 2005, Plaintiff visited her doctor who found her fit to return to work.

Plaintiff presented a note containing this opinion to Christine Booher, Defendant's Vice President

---

[1]For purposes of this motion the Court will assume Plaintiff's version of the facts is true.
However, the Court notes that Plaintiff's evidence regarding the June 13 incident is suspect at
best and appears to be based on nothing more than hearsay and speculation.
    Plaintiff was also involved in a second car accident on August 31, 2005.  After a night of
heavy drinking, Plaintiff awoke in the back of her Ford Escape, which was in a ditch on the side
of the road.  Plaintiff was convicted of Operating while Intoxicated and served 42 days in jail.
Because Plaintiff does not claim that this accident resulted in any injuries or exacerbated her
existing injuries, the Court finds it does not merit further discussion.

of Human Relations.  At the time, Plaintiff told Booher that she was not injured and did not need time off.

In the months following the accident, Plaintiff continued to miss work occasionally and mentioned her accident to several co-workers, including Busch and Booher.  Plaintiff also began experiencing severe headaches, which she also discussed with co-workers; Plaintiff rarely had non-work-related conversations with Busch and Booher and did not discuss her headaches with them in detail.  According to Plaintiff, these headaches were debilitating but did not affect her ability to do her job.  In mid-September, John Busch evaluated Plaintiff's performance since her hire in May. While Plaintiff's performance overall was satisfactory, she received criticism in several areas. Busch specifically noted that Plaintiff's effort, ability to meet deadlines, achievement of department goals, and implementation of special projects were unsatisfactory because of excessive absences, some of which related to her accident in June.  Upon receiving this review, Plaintiff informed Busch that she was feeling much better since June and did not expect future absences.

On September 19, 2005, Plaintiff was transported by ambulance to the University of Michigan Hospital after suffering a possible seizure.  While at the hospital, Plaintiff was diagnosed with post-concussive syndrome and discharged later that day.  The discharge instructions referred Plaintiff to the University's Traumatic Brain Injury Clinic (the Clinic) for a follow-up appointment but stated that she was free to return to work without restrictions.  After her discharge, Plaintiff attempted to make an appointment at the Clinic but learned that her insurance would not cover treatment there.  Upon learning this, Plaintiff contacted Christine Booher in an effort to change insurance plans so that she could be seen at the Clinic; Plaintiff also provided Booher with a copy of her discharge instructions.  Booher, after investigating Plaintiff's options, informed Plaintiff that

she could not switch insurance plans until the open enrollment period in February 2006 and, as a result, would have to seek treatment according to her current plan or wait until February to visit the Clinic. Plaintiff told Booher that she would wait until February to visit the Clinic and did not indicate that she needed time off to seek the medical treatment. On one occasion, however, Booher observed Plaintiff crying because of a headache and Plaintiff stated the she needed to see a doctor. Nevertheless, Plaintiff took ibuprofen and finished the work day.

Between September 2005 and January 2006, Plaintiff's primary responsibility was the preparation of Defendant's budget. John Busch expected a draft of the budget by December 1, 2005, and a final budget by the end of the year. Plaintiff did not meet either of these deadlines. When Busch questioned her, Plaintiff explained that she began work on the budget late, did not understand model budgets from prior years, and was trying to prepare it in an innovative way. Plaintiff further stated that Busch continued to change his budgeting goals, which caused further delays in the preparation of a final budget. Plaintiff did acknowledge that preparing the budget was a demanding, and at times contentious, process that frequently involved passionate discussions between Busch and all members of his management team. At no point did Plaintiff tell Busch that she could not meet the deadlines or otherwise perform her duties because of a medical condition.

In mid-to-late December 2005, Plaintiff had a conversation with John Busch. Although Plaintiff testified that she mentioned the need to take time off of work to see a doctor, the contents of this conversation are not clear. It was Plaintiff's belief that she could not see a doctor without taking time off of work and that she would be penalized if she did so. This belief arose as a result of her performance evaluation in September in which Busch referenced her frequent absences, some of which were related to her accident in June; yet despite this belief Plaintiff continued to take time

off work for various reasons after the September evaluation. Plaintiff was also familiar with Defendant's FMLA procedures and knew that as an executive she did not need to report absences or ask for time off. Plaintiff did not tell Busch that she needed extensive time off or that the doctor's visit was related to a serious medical condition. Plaintiff claims that Busch told her to wait until the budget was completed. Busch denies that Plaintiff requested leave of any kind and denies telling Plaintiff to finish the budget before taking time off.

At approximately the same time in December, Busch, as he occasionally did, required his management team to read a book entitled *The Game of Work*. On January 7, 2006, Plaintiff was reading the book at home when she came across a passage that she felt Busch intended for her to read. Plaintiff paraphrased the passage as "work until things get done." Based on the fact that Plaintiff had not completed the budget on time and the fact that Busch instructed her to finish the budget before she took time off, Plaintiff became enraged and telephoned Busch. In a conversation in which Plaintiff admits screaming and using obscenities, she informed Busch that she quit. Plaintiff did not return to work after that conversation and Busch finished the budget himself. Plaintiff eventually obtained treatment at the Traumatic Brain Injury Clinic in February 2006.

Plaintiff filed the present cause of action on March 14, 2007, claiming that Defendant interfered with her ability to take FMLA leave and discriminated against her for requesting leave. Defendant now moves for summary judgment on the ground that Plaintiff failed to provide proper notice of her intent to take leave for an FMLA-qualifying reason.

### III. LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

P. 56(c); *accord Turner v. City of Taylor*, 412 F.3d 629, 637 (6th Cir. 2005). When deciding a

motion for summary judgment, the court must view the evidence and draw all reasonable inferences

in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986). A genuine issue of material fact exists when there is "sufficient evidence favoring the

non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 249 (1986) (citations omitted). "If the evidence is merely colorable or is not significantly

probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted). "The mere

existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there

must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

## IV. ANALYSIS

In order to succeed on her FMLA claim, Plaintiff must demonstrate that: (1) she was an

eligible employee; (2) Defendant was a covered employer; (3) she was entitled to leave under the

FMLA; (4) she gave Defendant notice of her intention to take leave; and (5) Defendant denied her

the FMLA benefits to which she was entitled and/or took adverse action against her for exercising

her rights or opposing the interference with those rights. *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d

713, 719 (6th Cir. 2003). The parties do not dispute that Plaintiff was an eligible employee or that

Defendant was a covered employer. In the present motion, Defendant challenges the fourth element

of Plaintiff's prima facie case and maintains that she did not provide it with sufficient notice of her

intention to take FMLA leave. Plaintiff, on the other hand, contends that she provided adequate

notice and that (1) Defendant interfered with her ability to take leave (interference claim); and (2)

eventually retaliated against her for attempting to exercise her FMLA rights (discrimination claim).

The FMLA provides an eligible employee with up to twelve weeks of leave within a twelve-month period if the employee has "a serious health condition that makes the employee unable to perform the functions of ... [her] position." 29 U.S.C. § 2612(a)(1)(D). A serious health condition is defined as "an illness, injury, impairment, or physical or mental condition that involves ... (A) inpatient care in a hospital, hospice, or residential medical care facility or (B) continuing treatment by a healthcare provider." 29 U.S.C. § 2611(11). As a prerequisite to exercising FMLA rights based on a serious health condition, the Act requires an eligible employee to "request leave and give the employer notice that she is requesting such leave for a serious health condition that renders [her] unable to perform [her] position's duties." *Brenneman v. Medcentral Health Sys.*, 366 F.3d 412, 421 (6th Cir. 2004). *See* 29 U.S.C. § 2612(e); 29 C.F.R. § 825.303(a); *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1998) ("[T]o invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave."). While an employee is not required to specifically reference or even mention the FMLA, *see* 29 C.F.R. § 825.303(b), "the employee must give the employer enough information for the employer to reasonably conclude," *Walton v. Ford Motor Co.*, 424 F.3d 481, 486 (6th Cir. 2006) (quoting *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 451 (6th Cir. 1999)), that a qualifying event has occurred. "The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Brohm*, 149 F.3d at 523; *see Phillips v. Quebcor World Rai, Inc.*, 450 F.3d 308, 311 (7th Cir. 2006) (quoting *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1008 (7th Cir. 2001)) ("Employers ... are 'entitled to the sort of notice that will inform them ... that the FMLA may apply.'").

The Sixth Circuit addressed the adequacy of an employee's notice in *Brenneman*. The

plaintiff in *Brenneman* suffered from diabetes, which required him to use an insulin pump to control his condition. *Brenneman*, 366 F.3d at 416. While at work the plaintiff informed the defendant that he was having a problem with his insulin pump and would have to leave work early. *Id*. at 428. The *Brenneman* court assumed that the defendant had notice that the plaintiff suffered from a serious health condition requiring the use of an insulin pump but found the plaintiff's statement that he was having a problem with the pump to be insufficient notice as a matter of law. *Id*. at 429. The court noted that even though the problem with the pump caused the plaintiff to suffer serious physical effects, he did not relay this information to the defendant. *Id*. Instead, he merely stated that he had a problem with the pump, which the court recognized could have been construed as a minor mechanical problem. *Id*. The court explained that the plaintiff's statement was "insufficient to give rise to an inference that [he] was suffering from any physical impairment or illness or experiencing any period of incapacity." *Id*. Consequently, the plaintiff "did not reasonably apprise the defendant of a condition that *rendered him unable to perform his duties*" and did not entitle him to the FMLA's protections.[2] *Id*. (emphasis added).

The court reached a similar conclusion in *Walton*. In *Walton*, the plaintiff injured his knee outside of work and informed his supervisor the next day that he "twisted his knee" and intended to consult with the defendant's medical department. *Walton*, 424 F.3d at 482. During this consultation, the plaintiff did not indicate that he needed time off or request any leave forms. *Id*.

---

[2]On a separate occasion, the court in, dicta, found the plaintiff's statement that "he wasn't doing well and ... wouldn't be in today," was not sufficient under the FMLA–even where the defendant knew of the plaintiff's diabetes–because it failed to inform the defendant that the plaintiff's absence was related to his diabetes, a serious health condition, and thus did not reasonably apprise the defendant that his absence was FMLA-qualifying. *Brenneman*, 366 F.3d at 423 n.9.

at 486. After this visit, the plaintiff returned to work for a few hours and left for a doctor's appointment; however, the plaintiff never requested leave and merely called the defendant's security personnel to inform them that he would not be able to work for four more weeks. *Id.* On these facts, the Sixth Circuit concluded that the plaintiff failed to provide sufficient notice to the defendant that he intended to take FMLA leave. *Id.* The court found that the plaintiff's indication that he twisted his knee and the fact that he notified the defendant of his absences did not provide the defendant with notice that he suffered from a serious health condition that required leave. *Id.* The key question for the court was whether the plaintiff had provided enough information for the defendant to reasonably conclude that an event described in the FMLA had occurred and emphasized that the plaintiff "never explained the extent of the problem for which he was missing work, but instead merely said he had been told to stay off work." *Id.* at 488. Without explaining the extent of the problem, the defendant had no way of knowing that the plaintiff's injury rendered him incapable of performing his job duties. *Id.*; *see Phillips*, 450 F.3d at 312 (finding the employee's notice insufficient where it "failed to convey any information regarding the nature of her medical problem"). As such, the defendant was entitled to summary judgment.

In contrast, the court in *Cavin* concluded that the plaintiff's notice was sufficient under the FMLA. In that case the plaintiff was involved in a motorcycle accident and informed the defendant (1) that he had been in a motorcycle accident; (2) that he had been hospitalized as a result of the accident; and (3) that he was unable to work due to the injuries suffered in the accident. *Cavin*, 346 F.3d at 725. The *Cavin* court found this information provided the defendant with sufficient notice that an FMLA-qualifying event occurred and the plaintiff intended to take leave. *Id.* The court acknowledged that "'a person involved in a car accident does not necessarily incur a serious health

condition,'" *id.* (quoting *Reich v. Midwest Plastic Eng'g, Inc.*, No. 94-525, 1995 WL 514851, at \*4 (W.D. Mich. July 26, 1995)), but noted that the plaintiff had provided more than mere notice of an accident, *id.* In *Cavin*, the plaintiff "provided additional information about his treatment and condition–he told [the defendant] that he was *unable to perform his job because of his injury*." *Id.* (emphasis added). Consequently, the defendant had reason to believe the plaintiff requested FMLA leave.

Defendant argues that Plaintiff cannot establish her prima facie case because there is no evidence that she notified Defendant of her intention to take FMLA leave. In support of this position, Defendant has presented evidence tending to show that Plaintiff merely informed Defendant that she was in a car accident, she experienced painful headaches, and she wished to visit a doctor at some point in the future. In response, Plaintiff has come forward with her own deposition testimony in which she claims to have informed several of Defendant's executives that she needed to seek medical care, along with discharge instructions from the University of Michigan Hospital documenting her diagnosis. After thoroughly considering the record in this case and the applicable law, the Court finds that Plaintiff's evidence is insufficient to raise a genuine issue of material fact as to whether she provided proper notice under the FMLA.

The record shows that Plaintiff failed to "request leave and give the employer notice that she [was] requesting such leave for a serious health condition that render[ed] [her] unable to perform [her] position's duties." *Brenneman*, 366 F.3d at 421. It is undisputed that Plaintiff never formally applied for FMLA leave or specifically requested to take an extended period of leave. A close examination of Plaintiff's evidence reveals that her alleged notice to Defendant was nothing more than isolated statements either complaining about her headaches or expressing a desire to see a

10

doctor. At her deposition, Plaintiff testified that she informed several co-workers, including John

Busch and Christine Booher that she had been involved in a car accident. Yet as the court in *Cavin*

recognized, a person involved in a car accident does not necessarily suffer an FMLA-qualifying

injury. Thus, these statements could not provide sufficient notice under the FMLA. Furthermore,

Plaintiff testified that she complained to Booher, Busch and others regarding her headaches. But,

as in *Walton* where the plaintiff did not explain the extent of the problem for which he was missing

work, mere complaints about common ailments are insufficient to satisfy Plaintiff's notice

obligations. *See also Phillips*, 450 F.3d at 311-12 (concluding the employee's statement that she

was sick did not suggest that the medical condition might be serious or that the FMLA would apply);

*Booth v. Roadway Express., Inc.*, No. 03-660, 2005 WL 1705064, at \*7 (S.D. Ohio July 21, 2005)

(finding the employee's statement that he was having "problems with [his] physical well-being" did

not sufficiently alert the employer about the FMLA); *Hague v. Equistar Chem. Co.*, No. 02-0878,

2002 WL 1968390, at \*3 (N.D. Ill. Aug. 26, 2002) (finding the employee's statement that he was

"in pain from his tailbone" was insufficient notice because it did not "convey the severity of the

condition or the nature of his medical problem").

Significantly, unlike *Cavin*, Plaintiff never related any information to Defendant that her

injuries rendered her unable to perform her job.[3] To the contrary, the record shows that Defendant

had no reason to believe Plaintiff needed leave because the information Plaintiff conveyed indicated

that she was able to work. On the day of the accident, as in *Walton*, Plaintiff did not immediately

take leave but continued on her way to work and, in fact, worked the next several days without

---

[3]Indeed, during her deposition Plaintiff acknowledged that the medical condition may never have affected her ability to do her job. As such, Plaintiff is hard-pressed to show that Defendant had information suggesting that her condition rendered her unable to perform her job.

incident. The fact that Plaintiff continued to work, as in *Walton*, tends to show that an FMLA-qualifying event did not occur. Plaintiff then took approximately five days off. There is no evidence that Plaintiff notified anyone of the reason for this time off. Like the plaintiff in *Brenneman*, Plaintiff frequently missed work for a variety of reasons both before and after her accident in June 2005. Thus, as the *Brenneman* court observed, Plaintiff's absence could not necessarily be construed as connected to a serious medical condition. Shortly after returning to work, Plaintiff presented Christine Booher with a doctor's note stating that Plaintiff was clear to return to work. Also, Plaintiff repeatedly told Booher that she was willing to wait until February 2006 to seek medical care. Again, contrary to a serious medical condition under the FMLA, this information suggests that Plaintiff was capable of performing her job and did not intend to take leave. Moreover, Plaintiff testified that John Busch specifically asked her how she managed to work while suffering from severe headaches. In response Plaintiff stated that she was used to them, once more suggesting that Plaintiff could perform her job. As the courts in *Brenneman* and *Walton* concluded, Plaintiff's evidence was "insufficient to give rise to an inference that [she] was suffering from any physical impairment or illness or experiencing any period of incapacity." *Brenneman*, 366 F.3d at 429. Stated differently, absent some indication that Plaintiff's injuries rendered her unable to perform her job duties, Defendant had no way of knowing the FMLA might apply.

The most compelling evidence Plaintiff presents is her testimony that she asked John Busch for time off in December 2005 and the September 19, 2005, discharge instructions from the University of Michigan Hospital indicating she suffered from post-concussive syndrome and referring her to the University's Traumatic Brain Injury Clinic. Contrary to Plaintiff's assertion, there is nothing in the record, unlike *Cavin*, that shows Plaintiff asked Busch for time off based on

12

a serious medical condition covered by the FMLA. Similar to *Brenneman* and *Walton*, at best, the record reflects that Plaintiff requested time off to go see a doctor. This is not sufficient under the FMLA. *See Sechrist v. Harris Steel Co.*, No. 03-6197, 2005 U.S. Dist. LEXIS 30161, at *17 (N.D. Ill. Nov. 30, 2005) (citing *Collins v. BTN-Bower Corp.*, 272 F.3d 1006, 1009 (7th Cir. 2001)) ("[I]t [is] incumbent upon the plaintiff to link her current sickness to her long-term condition by specifically referring to that long term condition."). Plaintiff testified that she rarely spoke with Busch regarding her medical situation and any discussion about her headaches was not connected with any request for leave. Additionally, Plaintiff had previously told Busch that she was feeling much better since the June 13 accident. As a consequence, Plaintiff's vague request for time off to see a doctor, without any indication that she suffered from a medical condition that impaired her ability to do her job, did not constitute notice under the FMLA. *See Booth v. Roadway Express, Inc.*, No. 03-660, 2005 U.S. Dist. LEXIS 38420, at *26 (S.D. Ohio May 11, 2005) ("There are countless reasons a person may see a doctor, and not every visit to the doctor implies a person suffers from a serious medical condition which may qualify for FMLA leave.").

Similarly, with respect to the discharge instructions, at no point did Plaintiff relate to Booher or anyone else that her injury rendered her incapable of performing the functions of her job. In fact, the discharge instructions explicitly state that Plaintiff was able to return to work without restrictions. As such, the discharge instructions may have informed Defendant that Plaintiff potentially suffered from a serious medical condition, it could not possibly notify Defendant that this condition rendered her unable to perform her job duties. *See Walton*, 424 F.3d at 488. Therefore, this evidence is insufficient to create a genuine issue of material fact.

Plaintiff unpersuasively argues that her notice should be deemed sufficient because

13

Defendant, upon learning of the alleged June 13 accident and her severe headaches, did not inquire further. To be sure, the FMLA imposes some obligation on employers to obtain required information by informal means, *see* 29 C.F.R. § 825.303(b), but that obligation only arises after an employee has provided adequate notice under the Act. *Brenneman*, 366 F.3d at 422 ("Once an employer receives sufficient notice that the eligible employee is requesting leave for a FMLA-qualifying reason, the employer bears the burden to gather any additional information necessary for the leave to fall within the FMLA."). It is clear, on the other hand, that the FMLA does not impose any affirmative duty on employers to inquire into the health of their employees, without any notice, and see that they get proper medical treatment. *Id.* ("The FMLA does not require an employer to be clairvoyant."); *see Phillips*, 450 F.3d at 312 (quoting *Aubuchon v. Knauf Fiberglas, GmbH*, 359 F.3d 950, 953 (7th Cir. 2004)) ("Requiring employers to determine whether leave is covered by the FMLA every time an employee was absent because of a sickness would impose 'a substantial and largely wasted investigative burden on employers.'"); *Brock v. United Grinding Tech., Inc.*, 257 F. Supp. 2d 1089, 1100 (S.D. Ohio 2003) ("To interpret the FMLA in such a way that the employer must investigate an employee's leave whenever it is informed that the employee is 'ill' or 'sick' would certainly create a burden on the employer that Congress did not intend."). As the Court has concluded, Plaintiff failed to provide sufficient notice of a request for leave based on an FMLA-qualifying reason. Therefore, this argument lacks merit.

Based on the record in this case, the Court finds that Plaintiff has failed to present any evidence to create a genuine issue of fact that she provided sufficient notice under the FMLA. Accordingly, Defendant is entitled to summary judgment as to Plaintiff's claim that Defendant interfered with her rights under the FMLA. Likewise, absent proper notice, Plaintiff's FMLA

discrimination claim must also fail.

## V. CONCLUSION

For the reasons set forth above, the Court concludes that Plaintiff failed to provide Defendant with sufficient notice under the FMLA. Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's cause of action is HEREBY DISMISSED.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: August 19, 2008

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on August 19, 2008.

S/Marie E. Verlinde
Case Manager
(810) 984-3290